UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| WALTER THOMPSON,<br>　　Plaintiff,<br><br>　　v.<br><br>TIMOTHY F. BUKOWSKI, et al.,<br>　　Defendants. | )<br>)<br>)<br>)<br>)  Case No. 2:17-cv-02169<br>)<br>)<br>)<br>) |

### ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is a renewed motion for summary judgment [61] filed by Defendants Timothy F. Bukowski, Michael Downey, Brent Huffines, Chad Kolitwenzew, Robert Schultz, and Marlin Woods.

### I. BACKGROUND

Plaintiff, who is currently imprisoned at Shawnee Correctional Center, filed a complaint [1] under 42 U.S.C. § 1983, alleging Constitutional violations during his detention at the Jerome Combs Detention Center ("JCDC"). Plaintiff claimed that the vans JCDC used to transport detainees were inhumane and dangerous. As a result, Plaintiff experienced hemorrhoid and back pain, anal

bleeding, and a bump on his knee. Plaintiff also alleged deliberate indifference to his medical condition.

Defendants moved for summary judgment [27], and the Court concluded that Defendants were entitled to qualified immunity on Plaintiff's transportation claim [55]. However, the Court ordered further briefing on Plaintiff's deliberate indifference claim. As a result, Defendants have filed a renewed motion for summary judgment [61].

## II. THE APPLICABLE STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward

with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

The nonmovant may not rest on his allegations in the complaint but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.* "Conclusory allegations, unsupported by specific facts will not suffice." *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making that decision, the Court construes all facts and reasonable inferences drawn in the light most favorable to the nonmovant. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

### B. Eighth Amendment

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of inadequate medical care, an inmate must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 106. The deliberate indifference standard

requires an inmate to satisfy a substantial threshold to maintain a cruel and unusual punishment claim under the Eighth Amendment. *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "[A] claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition[,] and 2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

An objectively serious medical need is one that a physician has diagnosed as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). To satisfy the subjective component, a plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## III. DEFENDANTS' RENEWED SUMMARY JUDGMENT MOTION

### A. Preliminary Issues

Before reaching the merit of Defendants' motion for summary judgment, the Court considers Plaintiff's motions (1) to preserve Fourteenth Amendment claims [101], (2) to supplement his response [102], and (3) for extension of time to file a sur-reply [108].

The Court denies Plaintiff's motion to preserve his Fourteenth Amendment claims. Plaintiff asserts that as jail officials, Plaintiff's claims are governed by the Fourteenth Amendment. (101: p. 3.) However, as the Court explained in addressing Plaintiff's transportation claims, because Plaintiff's alleged constitutional violation occurred while he was serving a sentence for a criminal conviction, his claims fall under the Eighth Amendment and not the Fourteenth Amendment. (55: p. 2.)

The Court also denies Plaintiff's motion to supplement his response. Plaintiff's filing does not seek to supplement his current response to Defendant's renewed motion for summary judgment. Instead, Plaintiff seeks to supplement his June 2019 response [41] to Defendants' initial motion for summary judgment [27], which is not at issue.

The Court notes that Plaintiff has filed a motion for an extension of time to file a sur-reply that he has since requested the Court strike [111]. Therefore, the Court strikes Plaintiff's motion for an extension to file a sur-reply. *See Cummins, Inc. v. TAS Distributing Co., Inc.*, 676 F.Supp.2d 701, 705-06 (C.D. Ill. 2009) ("[U]nlike some other courts, this Court's Local Rules do not provide for the filing of a surreply in the summary judgment context.").

### B. Undisputed Material Facts

The relevant timeframes at issue are from March 19, 2014, to May 27, 2015 (fourteen months) and from July 21, 2016, to March 2, 2017 (eight months). During that time, JCDC used vans to transport Plaintiff about sixty-six miles, one way, to attend legal proceedings in Chicago on fifteen occasions. Plaintiff testified that he could not get comfortable when riding in the van because he was shackled, his back was up against a steel wall, the interior was small, and the seats were uncomfortable. (ECF 61-2: pp. 91-93.) Plaintiff added that because he could not see out of the van, and given the awkward seating angle, he feared a collision with another vehicle could "essentially take out your legs." (*Id.* p. 93:22-23.) Plaintiff claimed that on "at least three or four" occasions, he

experienced "anal bleeding" within twenty-four hours after riding in the van. (*Id.* pp. 95:1-23, 96:1-6.)

Plaintiff asserts that Defendant Huffines did not provide him appropriate medical care to treat his hemorrhoids, which resulted in bloody bowel movements. (*Id.* pp. 62:23, 74:23.) Plaintiff could not recall how long he had suffered from hemorrhoids but confirmed that he had been receiving a stool softener and laxatives to treat his hemorrhoids as of March 2018, the date of Plaintiff's deposition. (*Id.* pp. 62-63, 66-67).

On December 28, 2014, Plaintiff submitted a sick call slip complaining about rectal bleeding and other medical problems. (*Id.* pp. 120-122.) Three days later, Defendant Huffines examined Plaintiff, who complained that he had been suffering from hemorrhoids infrequently for a long time. (*Id.* pp. 120-122; 61-3: p. 2:9.) Huffines conducted a digital rectal exam using a lubricated glove. Huffines' examination did not reveal lesions or masses, but he observed a "very small external hemorrhoid," which he documented in his notes. (61-3: p. 2:11.) Plaintiff claims that Huffines was not gentle during his examination and jammed his finger into Plaintiff's rectum for a moment "before snatching it right

out." (61-2: pp. 97-100.) Huffines asserts that he has performed over fifty digital rectal examinations during his medical career and nothing unusual occurred when he conducted Plaintiff's rectal examination. (*Id.* p. 2:13.) Huffines prescribed Plaintiff naproxen for reported knee pain and Analpram-HC (a prescription cream for hemorrhoids) and told Plaintiff to return to the jail's medical clinic if he experienced new or worsening symptoms.

On February 23, 2015, Plaintiff submitted a sick call slip complaining of hemorrhoid bleeding while using the toilet. (61-2: p. 129.) On March 10, 2015, Plaintiff was sent to the local hospital regarding a possible hernia and complaints of abdominal pain. A computed tomography ("CT") scan of Plaintiff's abdomen and pelvis did not reveal significant medical issues. (61-2: p. 134.)

On March 20, 2015, Defendant Huffines saw Plaintiff again in the jail's medical clinic complaining of abdominal pain, testicular pain, and hemorrhoids. (*Id.* pp. 136-137; 61-3: p. 2:14.) Huffines noted the CT scan results showing negative results. Plaintiff told Huffines that he had not taken the previously prescribed hemorrhoid cream and denied new or worsening symptoms. *Id.* Huffines advised that Plaintiff needed to apply the prescribed cream

as instructed and return to the clinic if he experienced new or worsening symptoms. *Id.*

On April 15, 2015, Plaintiff submitted a medical request slip complaining of rectal bleeding, which he attributed to riding in a transport van a day earlier. (61-2: p. 138.) Two days later, Defendant Huffines examined Plaintiff and prescribed a soft chair that Plaintiff acknowledged receiving and using until Plaintiff transferred from JCDC on May 27, 2015. (*Id.* pp. 87-89, 138-139, 143.)

Upon Plaintiff's return to JCDC on July 21, 2016, Plaintiff advised officials that he had medical authorization to use a soft chair during his previous incarceration. In response, officials allowed Plaintiff to use a soft chair when in his cell or on the tier. (61-2: pp. 158:22-23, 159:1-16.) On September 12, 2016, Plaintiff saw Defendant Huffines and complained, among other things, at that time about recurring hemorrhoid pain. (27-5: p. 22.) Plaintiff also requested pain medication for injuries he sustained to his right shoulder and back in August 2015. (*Id.*) Huffines prescribed Plaintiff ibuprofen for pain and ordered lab work. (*Id.* p. 23.)

Plaintiff did not complain further of hemorrhoid pain, although Plaintiff continued to receive medication for mental health issues and complaints of chronic back pain. (*Id.* pp. 24-26). On December 12, 2016, Defendant Huffines conducted a follow-up examination with Plaintiff, who reported that he was doing well on his mental health medication but would never ride in a JCDC van again, believing that the van aggravated his hemorrhoids (*Id.* pp. 30-31). Nevertheless, Huffines continued Plaintiff's various medications. (*Id.* pp. 32-33). Plaintiff transferred from JCDC three months later, on March 2, 2017. During those three months, Plaintiff was transported by JCDC vans on three occasions but did not submit a sick call slip or otherwise complain of rectal bleeding.

Plaintiff admitted that he never spoke to Defendants Bukowski, Kolitwenzew, or Woods. (61-2: p. 80:18-23.) Instead, Plaintiff claims that he filed suit against Bukowski and Downey because they "run the jail," and against Woods because he was "in charge of security." (*Id.* pp. 81:2-23, 82:1-6.) Plaintiff asserts that he spoke with Defendant Schultz in May 2015, and Schultz told Plaintiff he would "check" Plaintiff's complaint regarding the safety

of the vans. (*Id.* p. 80:513.) Bukowski, Downey, Kolitwenzew, Schultz, Woods.

### C. Analysis

As earlier noted, the Court granted Defendants' initial motion for summary judgment on Plaintiff's claim that JCDC's vans were unsafe and inhumane [55]. However, the Court ordered further briefing on the following two issues: (1) "whether transporting Plaintiff in the van amounted to deliberate indifference to his hemorrhoid" condition and (2) whether Defendant Physician Assistant Huffines acted with deliberate indifference by allegedly not providing a soft chair for Plaintiff's use while at JCDC. (55: pp. 6-7.) The Court also explained that it would address Plaintiff's remaining claims against Huffines regarding an improper rectal exam and the administration of ineffective hemorrhoid cream on a more fully developed record.

Defendant Huffines asserts that he is entitled to summary judgment on Plaintiff's deliberate indifference claims because no evidence exists that would support a finding of deliberate indifference as defined by the Eighth Amendment. The Court agrees.

Although Plaintiff claims that being transported in JCDC vans exacerbated his hemorrhoid condition, the facts show that Plaintiff experienced intermittent flare-ups at most. On occasion, Plaintiff would experience some bleeding within twenty-four hours after riding in the JCDC vans. On other occasions, Plaintiff experienced bleeding after a bowel movement. However, regardless of source, the record is devoid of evidence that Defendant Huffines ignored Plaintiff's condition with the requisite state of mind to establish deliberate indifference. *See Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (concluding that to sustain a constitutional claim, a prisoner "must demonstrate something approaching a total unconcern for his welfare in the face of serious risks."); *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (concluding that "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm") (emphasis in original.).

Instead, the record shows that Defendant Huffines provided Plaintiff with appropriate medical care to alleviate Plaintiff's hemorrhoid condition, which included prescribing a soft chair after Plaintiff complained of rectal bleeding caused by riding in a transport van a day earlier. Huffines also provided Plaintiff care for

other ailments such as his knee and shoulder pain. Thus, even if Plaintiff provided admissible evidence that Huffines' rectal examination was less than gentle, as Plaintiff asserts, this action would not satisfy Plaintiff's burden. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) ("It's clear that evidence of medical negligence is not enough to prove deliberate indifference."). Furthermore, Plaintiff's assertion that the hemorrhoid cream Huffines prescribed was ineffective is not persuasive, given Plaintiff admitted that he did not apply it as specified.

Similarly, Plaintiff fails to provide any evidence from which to glean that Defendants Bukowski, Downey, Kolitwenzew, Schultz, and Woods were deliberately indifferent to Plaintiff's hemorrhoid condition by transporting Plaintiff in the van. Defendants are not medical professionals and are thus entitled to defer to the medical decisions relating to Plaintiff's care. *See Giles v. Godinez*, 914 F.3d 1040, 1049–50 (7th Cir. 2019) ("As the Third Circuit has held, 'absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the

Eighth Amendment scienter requirement of deliberate indifference.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

**IT IS THEREFORE ORDERED:**

1) **The Court DENIES Plaintiff's motions to preserve Fourteenth Amendment claims [101] and supplement his response [102].**

2) **The Court STRIKES Plaintiff's motion for extension of time to file a sur-reply [108].**

3) **The Court GRANTS Defendants' renewed motion for summary judgment [61] for the reasons stated.**

4) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present in his appeal to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered September 29th. 2021.

___*s/Sue E. Myerscough*___
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
